UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRUTH AKINS, *et al.*,<br><br>　　　　　　　Plaintiffs,<br><br>　v.<br><br>UNITED STATES OF AMERICA, *et al.*,<br><br>　　　　　　　Defendants. | Case No. 21-CV-1824-BAS-WVG<br><br>**ORDER:**<br><br>**(1) DISMISSING ACTION WITHOUT PREJUDICE (ECF No. 1); AND**<br><br>**(2) GRANTING PLAINTIFF TRUTH AKINS' MOTION TO PROCEED IN FORMA PAUPERIS (ECF No. 2)** |

　　　Before the Court is Plaintiff Truth Akin's Motion for Leave to Proceed In Forma Pauperis ("IFP Motion"). (ECF No. 2.) In light of the information in that Motion, the Court **GRANTS** Plaintiff's request. However, upon an initial pre-answer screening of Plaintiff's Complaint pursuant to 28 U.S.C. § 1915(e), the Court **DISMISSES WITHOUT PREJUDICE** this action. (ECF No. 1.)

//

//

//

## I. IFP MOTION

Plaintiff Truth Akins filed this action *pro se* on October 27, 2021 against Defendants United States of America, the State of Alabama, and an individual by the name of Judge S. Williams. (Compl., ECF No. 1.)[1] In addition, Plaintiff filed an IFP Motion. (IFP Mot., ECF No. 2.) Under 28 U.S.C. § 1915, a litigant who, because of indigency, is unable to pay the required fees or security to commence a legal action may petition the court to proceed without making such payment. The determination of indigency falls within the district court's discretion. *Cal. Men's Colony v. Rowland*, 939 F.2d 854, 858 (9th Cir. 1991), *rev'd on other grounds*, 506 U.S. 194 (1993) (holding that "Section 1915 typically requires the reviewing court to exercise its sound discretion in determining whether the affiant has satisfied the statute's requirement on indigency"). It is well-settled that a party need not be completely destitute to proceed IFP. *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339–40 (1948). To satisfy the requirements of 28 U.S.C. § 1915(a), "an affidavit [of poverty] is sufficient which states that one cannot because of his poverty pay or give security for costs . . . and still be able to provide himself and dependents with the necessities of life." *Adkins*, 335 U.S. at 339. However, "the same even-handed care must be employed to assure that federal funds are not squandered to underwrite, at public expense . . ., the remonstrances of a suitor who is financially able, in whole or in part, to pull his own oar." *Temple v. Ellerthorpe*, 586 F. Supp. 848, 850 (D.R.I. 1984).

District courts, therefore, tend to reject IFP applications where the applicant can pay the filing fee with acceptable sacrifice to other expenses. *See Skyler v. Saul*, No. 19-CV-1581-NLS, 2019 WL 4039650, at *3 (S.D. Cal. Aug. 27, 2019). Moreover, "*in forma pauperis* status may be acquired and lost during the course of litigation." *Wilson v. Dir. of Adult Insts.*, No. CIV S-06-0791, 2009 WL 311150, at *2 (E.D. Cal. Feb. 9, 2009). Finally, the facts as to the affiant's poverty must be stated "with some particularity, definiteness,

---

[1] The Complaint lacks enumerated paragraphs. Thus, citations thereto refer to the pagination assigned by the Court's Public Access to Court Electronic Records system.

and certainty." *United States v. McQuade*, 647 F.2d 938, 940 (9th Cir. 1981) (citing *Jefferson v. United States*, 277 F.2d 723, 725 (9th Cir. 1960)).

Here, Plaintiff represents that her monthly income during the last twelve months averaged $3,000. Due to disability, her spouse does not have any income. (IFP Mot. 1.) Based on Plaintiff's attestations, her household has a positive monthly cash flow of around $50 after paying for necessities and other expenses, namely $1,500 for rent, $300 for utilities, $100 for home maintenance, $100 for food, $100 for clothing, $100 for transportation, $200 for renter's insurance, $100 for credit-card payments, $400 for motor-vehicle payments, and $50 for recreational purposes. (*Id.* 4–5.) Plaintiff attests that she and her spouse have $16 in cash and bank accounts. (*Id.*) Plaintiff avers that she and her spouse do not own any assets of value. (*Id.*)

Under these circumstances, the Court finds that requiring Plaintiff to pay the court filing fees would impair her ability to obtain the necessities of life. *Thistle v. La Rose*, No. 21-CV-1414-JLS (MDD), 2021 WL 4150381, at *1 (S.D. Cal. Sept. 13, 2021) (granting IFP status where plaintiff had positive monthly cashflow of approximately $850 and owned assets valued at approximately $20,000); *Girley v. Ratekin*, No. 20-CV-01930-WQH-AHG, 2020 WL 5877834, at *1 (S.D. Cal. Oct. 2, 2020) (granting IFP status where plaintiff had approximately $240 in cash and bank accounts and a vehicle valued at $1,000); *Ngaiwe v. Cty. of San Diego Child Support Servs.*, No. 20-CV-1356-WQH-RBB, 2020 WL 4365902, at *1 (S.D. Cal. July 30, 2020) (granting IFP status where plaintiff had monthly positive cash flow of approximately $500 per month).

Considering the foregoing, the Court **GRANTS** Plaintiff's IFP Motion. (ECF No. 2.)

II.   PRE-ANSWER SCREENING

A.   Legal Standard

Because Plaintiff is proceeding IFP, her Complaint also requires a pre-answer screening pursuant to 28 U.S.C. § 1915(e)(2)(B). *See Lopez v. Smith*, 203 F.3d 1122, 1129 (9th Cir. 2000) (en banc) ("[S]ection 1915(e) applies to all in forma pauperis complaints,

not just those filed by prisoners."). Under this statute, the Court must *sua sponte* dismiss a plaintiff's complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *Id.* at 1126–27 (9th Cir. 2000) (discussing 28 U.S.C. § 1915(e)(2)). "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (quoting *Wheeler v. Wexford Health Sources, Inc.,* 689 F.3d 680, 681 (7th Cir. 2012)).

"The standard for determining whether a plaintiff has failed to state a claim for relief under which one can be granted under 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as the [Federal Rule of Civil Procedure ("Rule")12(b)(6)] standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to 28 U.S.C. § 1915 "incorporates the familiar standard applied in the context of failure to state a claim under [Rule] 12(b)(6)"). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the court to draw on its judicial experience and common sense." *Id.* The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.* Rule 12(b)(6) requires a complaint "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id*.

"[A] plaintiff's obligation to provide the 'grounds' of h[er] 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)) (alteration in original). "'[A]llegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences' are not entitled to the assumption of truth, and 'are insufficient to defeat a motion to dismiss for failure to state a claim.'" *Jones v. Medtronic*

*Inc.*, 411 F. Supp. 3d 521, 528 (D. Ariz. 2019) (quoting *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010)).  Furthermore, despite the deference the court must pay to a plaintiff's allegations, particularly where, as here, the plaintiff is *pro se*, it is not proper for the court to assume that "the [plaintiff] can prove facts that [she] has not alleged or that defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. Council of Carpenters*, 459 U.S. 519, 526 (1983).

### B.   Analysis

Plaintiff asserts on behalf of herself, along with ten relatives whom she names as co-Plaintiffs in the Complaint,[2] a single claim under 18 U.S.C. § 1589(a), Forced Labor ("Section 1589(a)"), against Defendants. (Compl. 5, ECF No. 1.)  Section 1589(a) makes it a federal crime for any person to:

> knowingly provid[e] or obtai[n] the labor or services of a person by any one of, or by any combination of, the following means—
>
> (1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person;
>
> (2) by means of serious harm or threats of serious harm to that person or another person;
>
> (3) by means of abuse or threatened abuse of law or legal process; or
>
> (4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint.

18 U.S.C. § 1589(a).

Pursuant to 18 U.S.C. § 1595(a), Congress has authorized "any individual who is a victim of a violation of [Section 1589(a)]" to "bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from

---

[2] Plaintiff's co-Plaintiffs are Betty Akins, Caleb Lowery, Betty Akins, Kavan Akins, Joshua Akins, Tayla Akins, Jerry Akins, Pamela Akins, Ronald Akins, Jr., and Veronica Jones ("Related Individuals").

participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorney['s] fees." 18 U.S.C. § 1595(a). This civil suit provision does not define the terms "victim," "perpetrator," or "person," as those terms are deployed in the statute. *Id.*

In support of her claim, Plaintiff alleges that on December 20, 1851, Defendant, Judge S. Williams of Barbour, Alabama purchased for $600 at a slave auction "Jane" and her "one-year old [child] Henry." Plaintiff alleges that she and her co-Plaintiff relatives "are the direct descendants of Henry." Plaintiff seeks monetary damages in the amount of $46,811,250 for restitution, emotional and mental anguish, and "loss of . . . heritage." (Compl. 5–6.) Reading the *pro se* Complaint generously, the Court *sua sponte* dismisses this action without prejudice for the following reasons.

First, the proscription that a non-lawyer, *pro se* plaintiff may not represent others applies to co-plaintiff relatives. Parties appearing in a federal court "may plead and conduct their own cases personally or by counsel." 28 U.S.C. § 1654. "It is well established that the privilege to represent oneself *pro se* provided by [Section 1654] is personal to the litigant and does not extend to other parties or entities." *Simon v. Hartford Life, Inc.*, 546 F.3d 661, 664 (9th Cir. 2008) (citing *McShane v. United States*, 366 F.2d 286, 288 (9th Cir. 1966)). A plaintiff appearing *pro se* has no authority to represent anyone other than herself. *Russell v. United States*, 308 F.2d 78, 79 (9th Cir. 1962). That prohibition applies with equal force when the person whom a non-lawyer *pro se* plaintiff seeks to represent is her relative. *See, e.g., Toro v. DYFS*, 857 F. App'x 106, 106 n.1 (3d Cir. 2021) (Mem.) ("Toro's complaint named some of her relatives as co-plaintiffs; however, none of those relatives signed the complaint or otherwise participated in the case, and Toro, as a *pro se* litigant could not represent them." (citing *Murray ex rel. Purnell v. City of Philadelphia*, 901 F.3d 169, 170 (3d Cir. 2018)); *Celestin v. U.S. Dep't State Bureau of Consular Affairs*, No. 20-CV-947-AMD-LB, 2020 WL 6901081, at *2 (E.D.N.Y. Nov. 23, 2020) (holding "plaintiff could not represent his brother because non-lawyers can only

represent themselves; they cannot represent other people, even their relatives"); *Sonnik v. Allstate Ins. Co.*, No. 2:18-CV-00366-TLN-CKD, 2019 WL 2339570, at *2 (E.D. Cal. June 3, 2019) (similar); *Quimby v. Vallance*, CV05-202-AS, 2005 WL 2007877, at *2 (D. Or. Aug. 16, 2005) (similar).

The Court observes that the Complaint is affixed only with Plaintiff Truth Akins' signature. From the absence of the other ten co-Plaintiffs' signatures, it appears that Plaintiff Truth Akins seeks to engage in the unauthorized practice of law by representing her relatives in federal court. *See Downing v. Wolfson*, No. 2:16-CV-02131-APG-PAL, 2017 WL 3382562, at *3 (D. Nev. Mar. 27, 2017) (inferring *pro se* plaintiff sought to represent family members from the absence of relatives' signature on the pleading); *Quimby*, 2005 WL 2007877, at *2 (same). Thus, to the extent Plaintiff seeks to assert claims on behalf of anyone other than herself, those claims must be dismissed without prejudice.[3] *See Qassimyar v. Children's Hosp. & Health Ctr.*, No. 05-CV-00350-JAH-CAB, 2006 WL 8455345, at *1 n.1 (S.D. Cal. Apr. 7, 2006) (holding "plaintiff is not entitled to appear *pro se*" on behalf of family members); *Hutchison v. Live Well Counseling*, 1:21-CV-2973-SCJ, 2021 WL 3714006, at *1 n.2 (N.D. Ga. July 27, 2021) ("In light of Plaintiff['s] . . . *pro se* and non-attorney status, he cannot represent his family members in federal court."); *Villone v. United Parcel Servs., Inc.*, No. CV-09-8213-PCT-LOA, 2009 WL 4824796, at *1 (D. Ariz. Dec. 9, 2009) (similar). Accordingly, the Court finds dismissal without prejudice of claims asserted by Plaintiff on behalf of her relatives is appropriate. *See, e.g.*, *C.E. Pope Equity Trust v. United States*, 818 F.2d 696, 697–98 (9th Cir. 1987) (affirming dismissal of suit brought by *pro se* on behalf of trust on ground

---

[3] Given the absence of factual allegations in the Complaint, it is unclear whether Plaintiff is suing in a representative capacity on behalf of her ancestors "Jane" and "Henry" or whether she claims that she is a "victim" under the civil suit provision, *see* 18 U.S.C. § 1595(a). To the extent Plaintiff by this action seeks to assert claims on behalf of her forebears, she may not do so for the reasons stated above. *C.f. William v. United Staes*, 477 F. App'x 9, (3d Cir. 2012) (holding daughter could not represent deceased father *pro se* in federal court to prosecute Federal Tort Claims Act cause of action); *Powerserve Int'l, Inc. v. Lavi*, 239 F.3d 508, 514 (2d Cir. 2001) ("attorney-in-fact" for daughter not permitted to litigate *pro se* on her behalf).

*pro se* plaintiff lacked authority to represent entity in federal court); *Downing*, 2017 WL 3382562, at *3; *Schwartz v. Snohomish Cty.*, No. C05-732P, 2005 WL 8172683, at *3 (W.D. Wash. Nov. 21, 2005).

Second, Plaintiff seeks damages from Defendants who are immune from suit. *See Lopez*, 203 F.3d at 1226–27 (interpreting 28 U.S.C § 1915 as requiring *sua sponte* dismissal of suits against immune defendants). The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend XI. That is, states "are entitled to sovereign immunity from damages actions unless the state waives that immunity by consenting to suit." *Bass v. Cty. of San Diego*, No. 08-CV-2135-MMA-NLS, 2008 WL 11337429, at *1 (S.D. Cal. Dec. 5, 2008) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–102 (1984)). "Waiver of Eleventh Amendment immunity by a state will be found 'only where stated by the most express language or by such overwhelming implication from the text [of a statute] as [will] leave no room for any other reasonable construction.'" *Micomonaco v. Washington*, 45 F.3d 316, 319 (9th Cir. 1995) (quoting *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 239–40 (1985)). To find that Congress intended to abrogate sovereign immunity, a court must locate "unmistakably clear" or "unequivocal" language in the statute that does so. *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 73 (2000).

Plaintiff does not allege, nor is it apparent to the Court, that in enacting Sections 1589 and 1595, Congress intended to abrogate states' sovereign immunity. Although this is a novel issue in the Ninth Circuit, the Tenth Circuit undertook a fulsome and robust analysis of the pertinent statutes in *Mojsilovic v. Oklahoma ex rel. Bd. of Regents for the Univ. of Okla.*, 841 F.3d 1129 (10th Cir. 2016) ("*Mojsilovic*") and found absent from these laws an unmistakably clear statement of congressional intent to abrogate sovereign immunity. The Court agrees with the reasoning set forth in *Mojsilovic*. Section 1595(a) creates a private cause of action against a "perpetrator" or "whoever" violates Section

1589(a). However, as mentioned above, Section 1595(a) does not define those terms. It is well-settled that the mere creation of a private cause of action by Congress, without more, is neither an unequivocal nor unmistakable abrogation of sovereign immunity. *Atascadero*, 473 U.S. at 245–46; *Fla. Prepaid Postsecondary Educ. Expense Bd. v. Coll. Sav. Bank*, 527 U.S. 627, 631–32 (1999) (observing that previously undefined statutory language creating liability for "whoever" violated patent laws failed to abrogate sovereign immunity). Accordingly, Plaintiff's claims against Defendant State of Alabama cannot proceed.

For similar reasons, Plaintiff's suit against Defendant United States may not continue. Although derived from a different source than state sovereign immunity, *see* 5 Kenneth Davis, Administrative Law Treatise 6–7 (2d ed. 1984) (explaining the principle of sovereign immunity of the United States is borne from English law as opposed to the Eleventh Amendment), the principle that the United States may not be sued unless it consents to such suit is equally long-standing and well-established, *see Cohens v. Virginia*, 19 U.S. 264, 411–12 (1821) ("The universally received opinion is that no suit can be commenced or prosecuted against the United States[.]"). "It is axiomatic that the United States can only be sued to the extent that it has waived its sovereign immunity." *Cato v. United States*, 70 F.3d 1103, 1107 (9th Cir. 1991) (citing *Baker v. United States*, 817 F.2d 560, 562 (9th Cir. 1987)). Courts lack jurisdiction to entertain suits against the United States to which the United States has not consented. *See, e.g., United States v. Sherwood*, 312 U.S. 584, 586 (1941) ("The United States, as sovereign, is immune from suit save as it contends to be sued."). "It is likewise well settled that a waiver of the government's sovereign immunity 'cannot be implied but must be unequivocally expressed.'" *Cato*, 70 F.3d at 1107 (quoting *United States v. Mitchell*, 445 U.S. 535, 538 (1983)) (quotation marks and citation omitted). Based upon the analysis above, the Court finds that the United States similarly has not unequivocally consented to suit under Section 1595(a) and, thus, is immune from suit. *See Mojsilovic*, 841 F.3d at 1129.

Third, Plaintiff instituted this action against a deceased Defendant. *See Cavanaugh v. County of San Diego*, 18-CV-2557-BEN-LL, 2020 WL 8838234, at *4 (S.D. Cal. Aug. 24, 2020) (holding plaintiff could not pursue claims against a defendant who had died prior to initiation of the action); *see also House v. Mitra QSR KNE LLC*, 796 F. App'x 783, 788 (4th Cir. 2019) (collecting cases); *Lacy v. Tyson*, No. 1:07-cv-00381, 2012 WL 4343837, at *2 (E.D. Cal. Sept. 20, 2012) (collecting cases in the Rule 25 context). The transaction giving rise to this action occurred in December of 1851. Although Plaintiff is entitled to the assumption of truthfulness concerning the facts alleged in her Complaint and all reasonable inferences therefrom, Plaintiff is not entitled to "unreasonable inferences" or "unwarranted deductions of fact," even considering the liberalities to which she is afforded as a *pro se* litigant. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Because it is inconceivable Defendant Williams was alive when Plaintiff commenced this action, her claims against him must be dismissed.[4]

Fourth, the Complaint lacks factual statements that give rise to liability under Section 1589(a), and instead consists only of legal conclusions, which this Court cannot credit as true. *See Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 ("[C]ourts are not bound to accept as true a legal conclusion couched as a factual allegation[.]" (quotations omitted)). The Complaint alleges only that Defendant Williams purchased at a slave auction in 1851 two of her ancestors. (Compl. 6.) While heinous, this assertion is unaccompanied by a scintilla of factual content directed towards a single requisite element of Section 1589(a). *See* 18 U.S.C. § 1589(a)(1)–(4) (delineating circumstances of forced labor that must be present for

---

[4] To provide a point of reference, the Court observes that the oldest known living person was born in 1903, approximately 52 years after the transaction upon which this action is premised occurred. *World's Oldest Person Marks 118th Birthday in Fukuoka*, THE JAPAN TIMES, Jan. 2, 2021, https://www.japantimes.co.jp/news/2021/01/02/national/worlds-oldest-person-marks-118th-birthday-fukuoka/.

criminal and/or civil liability to arise under the statute).  Furthermore, with respect to the government Defendants, Plaintiff does not specify how she was abused by a public official or even identify a public official connected to the wrongful acts in question.  *See McHenry v. Renne*, 84 F.3d 1172, 1177 (9th Cir. 1996) (holding that a Complaint must "fully set[] forth who is being sued, for what relief, and on what theory, with enough detail to guide discovery").  Because the Complaint lacks a sufficient factual material to state a claim against any Defendant, it is subject to dismissal.

Finally, Plaintiff fails to allege either constitutional or statutory standing.  *See McFalls v. Alonzo*, No. 21-CV-849-MMA-RBB, 2021 WL 2577149, at *4 (S.D. Cal. June 23, 2021) (dismissing *sua sponte* plaintiff's claim under 28 U.S.C. § 1915 for failure to establish standing).  Those who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement of showing an actual case or controversy under Article III of the U.S. Constitution.  *Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983).  To do so, a plaintiff must allege the irreducible constitutional minimum of:  (1) an injury in fact via "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical"; (2) causation, *i.e.*, the injury is "fairly traceable to the challenged action of the defendant"; and (3) redressability, *i.e.*, it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal citations and quotations omitted).  "Each element of standing must be supported with the manner and degree of evidence required at the successive stage of litigation." *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011).  At the pleading stage, a trial court must accept as true all material allegations of the complaint, including those that relate to standing, and construe the complaint in favor of the complaining party.  *Warth v. Seldin*, 422 U.S. 490, 501 (1975). General factual allegations of injury resulting from the defendant's conduct may suffice because the trial court presumes that general allegations embrace those specific facts necessary to support a claim.  *Lujan*, 504 U.S. at 561.  A failure to establish Article III

standing results in dismissal of the complaint for lack of subject matter jurisdiction. *Steel Co. v. Citizens for Better Envt.*, 523 U.S. 83, 94 (1998).

Plaintiff's precise theory of standing is unclear on the face of her Complaint. On the one hand, it appears as though Plaintiff asserts standing derivatively from the injury suffered by her ancestors under a third-party standing theory. However, construing the Complaint liberally as this Court must, Plaintiff's allegations might also be interpreted as asserting injury on a continuing basis in so far as she alleges "emotional and mental damages from loss of heritage." (Compl. 6.) Neither theory satisfies the "injury-in-fact" requirement of Article III.

"As a general rule, a litigant must assert h[er] own legal rights and cannot assert the legal rights of a third-party." *In re African-American Slave Descendants Litig.*, 375 F. Supp. 2d 721, 753 (N.D. Ill. 2005) (citing *Powers v. Ohio*, 499 U.S. 400, 410 (1991)); *see also Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982) (holding plaintiff must "show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant" (quotation marks and citation omitted)).

This Court agrees with the third-party standing analysis applied by the Honorable Charles R. Norgle of the United States District Court for the Northern District of Illinois, who, in *In re African-America Slave Descendants Litig.*, a multi-district suit involving nearly identical claims supported by more fulsome factual allegations than presented here, held that

> Plaintiffs cannot establish a personal injury by merely identifying tort victims and alleging a genealogical relationship. The illegal conduct at issue here, the institution of slavery, is alleged to have directly affected Plaintiffs' ancestors.[] Plaintiffs now, more than a century later, point to that horrific institution as the source of their derivative injury. However . . . Plaintiffs fail to allege that they have personally suffered a concrete and particularized injury as a result of Defendants' putatively illegal conduct; rather, Plaintiffs' alleged injury is derivative of the injury inflicted upon enslaved African-Americans over a century ago . . . . This is insufficient to establish standing, and contrary to centuries of well-settled legal principles requiring that a litigant demonstrate

a personal stake in an alleged dispute. *See*, *e.g.*, *Tyler* [*v. Judges of Ct. of Registration*, 179 U.S. 405, 406–07, 21 S. Ct. 206 (1900)] (stating that a plaintiff must "aver an injury particular to himself, as distinguished from the great body of his fellow citizens"); *Lujan*, 504 U.S. at 560, 112 S. Ct. 2130 (stating that a "plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is . . . concrete and particularized."); *Raines* [*v. Byrd*, 521 U.S. 811, 819 (1997)] (stating that "a plaintiff's complaint must establish that he has a 'personal stake' in the alleged dispute, and that the alleged injury suffered is particularized as to him"); *see also* Antonin Scalia, *The Doctrine of Standing as an Essential Element of the Separation of Powers*, 17 Suffolk U. L. Rev. 881, 881–82 (1983) ("I suggest that courts need to accord greater weight than they have in recent times to the traditional requirement that the plaintiff's alleged injury be a particularized one . . . ."). To recognize Plaintiffs' standing in this case "would transform the federal courts into 'no more than a vehicle for the vindication of the value interests of concerned bystanders.'" *Allen* [*v. Wright*, 468 U.S. 737, 756 (1984)] (citing *United States v. SCRAP*, 412 U.S. 669, 687, 93 S. Ct. 2405, 37 L.Ed.2d 254 (1973).

375 F. Supp. 2d at 748 (alterations added).

Nor does Plaintiff's continuing-injury theory satisfy Article III standing requirements. In so holding, this Court cannot deny the similarities between Plaintiff's allegations here and those of plaintiffs in *Cato v. United States*, 70 F.3d 1103 (9th Cir. 1995), in which the Ninth Circuit concluded that plaintiffs who alleged injuries traceable to the institution of slavery and lasting over the course of several generations proffered in the eyes of the law "a generalized, class-based grievance" that is "'more appropriately addressed in the representative branches [of the United States government than in the federal courts].'" *Cato*, 70 F.3d at 745 (quoting *Allen*, 468 U.S. at 751). The "loss of heritage" Plaintiff alleges is insufficiently particularized for the same reasons. (*See* Compl. 6.)

In so holding, this Court notes that it is not unsympathetic to what it construes as Plaintiff's allegation that she has suffered intergenerational trauma directly and discernably traceable to the institution of slavery. (Compl. 6 (alleging "emotional/mental damages from loss of our heritage").) Indeed, recent studies within the psychiatric community

suggest that trauma affects not only the victims of such trauma, but, through epigenetic mechanisms, causes victims' offspring to be more susceptible to trauma-related disorders.[5] However, even if this Court were to credit Plaintiff's intergenerational trauma as sufficiently particularized to confer her constitutional standing, Plaintiff still fails to show statutory standing.

To ascertain whether a plaintiff has statutory standing, the Court must determine whether "a plaintiff's complaint fall within the zone of interests protected by the law invoked." *Cato*, 70 F.3d at 1110 (quoting *Allen*, 468 U.S. at 751). "Courts determine whether a plaintiff is within the zone of interests 'using traditional tools of statutory interpretation.'" *Chen v. Chase Bank USA, N.A.*, 393 F. Supp. 3d 850, 852 (N.D. Cal. 2019) (citing *Bank of Am. Corp. v. City of Miami, Fla.*, __ U.S. __, 137 S. Ct. 1296, 1303 (2017)). A plaintiff who lacks statutory standing under the law invoked by her complaint is said to have failed to state a claim for relief. *Vaughn v. Bay Envtl. Mgmt., Inc.*, 567 F.3d 1021, 1022 (9th Cir. 2008). Even construing the Complaint generously, Plaintiff's claim that she suffers from intergenerational trauma falls well outside the zone of interests protected by Sections 1589 and 1595. Section 1589(a) is a federal criminal statute that protects persons from being forced to provide their labor to another through unlawful physical or legal means by making such conduct punishable with criminal sanctions.

---

[5] Rachel Yehuda, PhD., Professor of Psychiatry and Neuroscience and the Director of the Traumatic Stress Studies Division at the Mount Sinai School of Medicine "has spearheaded a number of studies on different victim groups using different empirical methods, the results of which all indicate that women can pass down an increased chance of [Post Traumatic Stress Disorder ("PTSD")] to their children if they experience prenatal PTSD." Elizabeth Topolosky, *The Horror in Our Heads: Cultural Trauma Expert Testimony in U.S. Courts*, 52 Akron L. Rev. 91, 115–16 (2018) (citing Yehuda, R., *et al.*, *Maternal, Not Paternal PTSD, is Related to Increased Risk for PTSD in Offspring of Holocaust Survivors*, 42 Psychiatric Res. 1104 (2008) (finding children of women who developed PTSD as a result of the Holocaust were more likely to exhibit PTSD symptoms than children whose mothers were not diagnosed with PTSD) and Yehuda, R., *et al.*, *Transgenerational Effects of Posttraumatic Stress Disorder in Babies of Mothers Exposed to the World Trade Center Attacks During Pregnancy*, J. of Clinical Endocrinology & Metabolism 4115–18 (2005) (finding newborns of women who were pregnant and present at or near the World Trade Center on September 11, 2001 had significantly decreased levels of cortisol—a stress-related hormone that aids the body in shutting down non-essential functions to conserve energy in flight or fight situations and lower adrenaline levels—relative to the control subjects)).

Section 1595(a) protects victims of violations under Section 1589(a) by providing them with the right to seek to hold liable perpetrators and collect from them the fruits of their stolen labor. Neither Sections 1589(a) nor Section 1595(a) can be interpreted fairly to extend their protections to a victim's entire genealogical lineage.

Because Plaintiff (1) seeks to represent others, (2) seeks to sue immune defendants; (3) seeks to sue a deceased individual; (4) fails to state a claim for relief; and (5) lacks constitutional or statutory standing, the Court finds dismissal appropriate under U.S.C. § 1915(e)(2)(ii).

### III. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff's IFP Motion and DISMISSES **WITHOUT PREJUDICE** the action. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). The Court will grant Plaintiff an opportunity to correct the deficiencies in her Complaint. If she decides to do so, she must file an amended complaint titled "First Amended Complaint" no later than **December 9, 2021**. Failure to timely file an amended complaint will result in dismissal of this action with prejudice.

IT IS SO ORDERED.

DATED: November 9, 2021

Hon. Cynthia Bashant
United States District Judge